[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 166.]

THE STATE EX REL. FRAZIER, APPELLEE, *v.* CONRAD, ADMR., OHIO BUREAU OF WORKERS' COMPENSATION, APPELLANT.

[Cite as *State ex rel. Frazier v. Conrad*, 2000-Ohio-127.]

*Workers' compensation—Termination of permanent total disability compensation—Where Industrial Commission's decision is supported by some evidence, it cannot be disturbed in mandamus as an abuse of discretion.*

(No. 98-2726—Submitted May 24, 2000—Decided June 21, 2000.)

APPEAL from the Court of Appeals from Franklin County,

No. 97-APD10-1404.

————————————

{¶ 1} James D. Frazier, appellee, sought a writ of mandamus directing the Industrial Commission of Ohio ("commission") to amend its order finding him ineligible for permanent total disability compensation ("PTD") as of April 30, 1995, and to find that he qualified for PTD up until January 2, 1997. The court of appeals granted the writ, holding that there was no evidence of record to prove that Frazier was less than permanently and totally disabled during this period and, therefore, that the commission had abused its discretion in denying him PTD. The Ohio Bureau of Workers' Compensation ("bureau"), through its administrator, appeals as of right.

{¶ 2} Frazier injured his back while working as a truck driver for Maupin Cartage, Inc., and he was granted PTD, to commence as of February 15, 1989. The commission awarded this compensation based on Frazier's physical inability to perform duties requiring more than sedentary work, as well as his functional illiteracy and consequent inability to be rehabilitated for sedentary employment.

{¶ 3} Frazier received PTD for a number of years. He continued to receive PTD even though he was physically able on April 30, 1995, to begin learning how to install siding for his brothers' construction company. Thereafter, Frazier trained one or two days a week until, by January 1997, he was skilled enough to start working full-time as a subcontractor for his brothers.

{¶ 4} Frazier ultimately advised the bureau that his medical condition allowed physical labor in a work environment, but not until January 31, 1997, when he revealed that he had been forced to return to his worksite. Frazier provided this information in a motion requesting that the commission dispose of the Application for Approval of Settlement Agreement that he had filed in June 1996.[1] The bureau later denied the settlement application.

{¶ 5} In February 1997, a telephone tip prompted the bureau to assign a surveillance team to investigate Frazier's activities. According to their report, the investigators videotaped Frazier on eight days in March and April 1997, and on each occasion, they observed him performing the physically demanding tasks necessary to install siding, including climbing ladders, measuring and cutting materials, carrying equipment, and attaching the siding. Bureau physician Dr. Anthony Williams reviewed Frazier's file evidence and an edited version of the surveillance videotape. He concluded that "the video activities performed by the claimant are categorically inconsistent with the receipt of permanent total disability benefits. His observed physical capacity far exceeds that reported by previous medical evaluators."

{¶ 6} On April 30, 1997, the bureau investigators confronted Frazier, who acknowledged that he had been receiving PTD while working. On the same day, Frazier related in a signed statement that he had started learning to measure, cut,

---

1. On the settlement application, Frazier answered the question "Are you currently working?" by marking the box for "No"; however, a discrepancy exists as to whether Frazier may have initially answered "Yes" to this question and later, after the application was filed, changed his response to "No."

and install siding for his brothers about two years earlier, and that he had not been good enough to work full-time as a subcontractor until January 1997. Frazier also expressed that he knew he was not eligible for PTD while he was working; however, he had been in financial trouble and had needed the income. The bureau referred the matter of Frazier's continued PTD eligibility to the commission for further review. The commission terminated Frazier's PTD as of April 30, 1995, and declared an overpayment, explaining:

"There is no material dispute as to the fact that the claimant returned to work and continued to receive [PTD]. The only position presented by the claimant's attorney is that the denial of [PTD] should not be terminated until January 1, 1997. As of that date, the claimant states in his signed statement that he started back to work full-time, five days a week, working 8 to 10 hour days.

"However, the claimant states in his signed statement that over the last two years he trained for the job and worked one or two days a week. The claimant states that he trained until he was good enough to work full time five days a week. The clear implication of this statement is that the claimant needed to improve his skill level to perform this work. *The claimant does not state that he was not physically capable of this type of work*.

"The claimant currently works installing siding on homes. The work requires climbing on ladders and installing the siding. It appears to be physically demanding work. The claimant's capability of such work is inconsistent with the status of permanent total disability." (Emphasis added.)

**{¶ 7}** Frazier challenged the commission's decision by initiating this action in the court of appeals.

---

*Betty D. Montgomery,* Attorney General, and *Julie M. Lynch*, Assistant Attorney General, for appellant.

*Scott M. Knisley Co., L.P.A.*, and *David L. Knisley;* and *James C. Becker*, for appellee.

───────────────

**Per Curiam.**

**{¶ 8}** The court of appeals found that because Frazier had qualified for PTD, in part, based on his functional illiteracy, he continued to qualify for this compensation, even though he was physically capable of the labor-intensive duties required to install siding. We disagree and, accordingly, reverse.

**{¶ 9}** In 1989, Frazier alleged that he was permanently and totally disabled because he could no longer perform duties requiring more than sedentary work due to his industrial injury. Frazier also maintained that (1) his employment experience had been entirely in the labor field as a truck driver or auto mechanic, and (2) although he was forty-one years old, he had only a sixth grade education and, consequently, could not be vocationally rehabilitated. The commission accepted Frazier's arguments. It granted Frazier PTD because he could not perform physically demanding duties and could not reasonably be taught the skill necessary to perform sedentary ones.

**{¶ 10}** The commission seized on Frazier's intellectual capacity to assess whether he was realistically capable of sustained remunerative employment, but the foundation for the commission's award was Frazier's purported inability to perform tasks requiring physical labor. The bureau's surveillance and medical reports destroyed that foundation, and the commission credited those reports. See *State ex rel. Midmark Corp. v. Indus. Comm.* (1997), 78 Ohio St.3d 2, 11, 676 N.E.2d 73, 79 (Surveillance evidence that contradicts the contention that claimant is limited to sedentary duties can justify commission in terminating PTD.). Frazier might have submitted proof that notwithstanding his physical ability to install siding, his injury-induced condition still prevented him from engaging in sustained remunerative

employment. But Frazier does not even make this claim. His argument is, instead, that he remained permanently and totally disabled until January 1997, because he had not acquired sufficient expertise to do physical labor as a subcontractor.

{¶ 11} For this reason, we agree with the court of appeals' magistrate's finding that the physical capabilities Frazier admitted to having at least as of April 30, 1995, constituted some evidence for the commission's having terminated his PTD on that date. And contrary to the court of appeals' distinction, our decision is not affected by whether Frazier was paid for the duties he performed before January 1997, or not. As the magistrate observed, the test for Frazier's continued PTD eligibility is not whether he actually performed sustained remunerative employment; the standard is whether Frazier was *capable* of sustained remunerative employment. *State ex rel. Hartness v. Kroger Co.* (1998), 81 Ohio St.3d 445, 448, 692 N.E.2d 181, 183. The evidence is uncontradicted in this case that Frazier was capable of working at some level in the labor field.

{¶ 12} Accordingly, we hold that the commission had some evidence for terminating Frazier's PTD as of April 30, 1995, and for declaring an overpayment. Where the commission's decision is supported by some evidence, it cannot be disturbed in mandamus as an abuse of discretion. *State ex rel. Yancey v. Firestone Tire & Rubber Co.* (1997), 77 Ohio St.3d 367, 673 N.E.2d 1374. The court of appeals' judgment granting a writ of mandamus, therefore, is reversed.

*Judgment reversed*
*and writ denied.*

MOYER, C.J., RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

F.E. SWEENEY, J., dissents and would affirm the judgment of the court of appeals.

_____